IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC JONES | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-21-860 |
| CHRISTINE E. WORMUTH | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendant Christine E. Wormuth ("Defendant"), as Secretary of the Army, moves this Court to dismiss, or in the alternative, for a grant of summary judgment. Plaintiff Eric Jones ("Plaintiff"), a federal employee, filed a Complaint alleging employment discrimination and hostile work environment on the basis of age and disability in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), codified in 29 U.S.C. § 621 *et seq.* (Count I); the Rehabilitation Act of 1973 ("Rehabilitation Act"), codified in 29 U.S.C. § 701 *et seq.* (Count II); and Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] codified in 42 U.S.C. § 2000e *et seq.* (Count III). ECF No. 1. Defendant now files a Motion to Dismiss the Complaint or in the Alternative for Summary Judgment (ECF No. 13). After considering the Motion and responses thereto (ECF Nos. 16, 17) the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021).

---

[1] In Count III of the Complaint, Plaintiff alleges a violation of "Title VII of the Civil Rights Act of 1991." ECF No. 1 at 2; ECF No. 16-1 at 1. However, no Title VII to the Civil Rights Act of 1991 exists. *See* S.1745, 102nd Cong. (1991). Plaintiff's brief, however, cites to Title VII of the Civil Rights Act of 1964 statutes and case law. *See* ECF No. 16-1 at 18, 18 n.12, 22. Presumably, "Plaintiff intended to invoke the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, which contains Title VII and was amended by the Civil Rights Act of 1991." *Kearns v. Northrop Grumman Sys. Corp.*, No. CIV.A. ELH-11-1736, 2014 WL 2170781, at *1 n.2 (D.Md. May 23, 2014). The Court will construe Plaintiff's claim as such.

1

For the reasons stated herein the Defendant's motion is GRANTED in part with regard to Counts II and III and DENIED in part with regard to Count I.

## FACTUAL BACKGROUND

Plaintiff, born 1952, is a U.S. Army civilian employee employed at the U.S. Army Aberdeen Proving Ground ("APG") military base. ECF No. 1 ¶¶ 1, 3; ECF No. 13-1 at 1. Plaintiff was working at Fort Monmouth in New Jersey when he received a Permanent Change of Station ("PCS") order to report to APG on March 27, 2011. ECF No. 1 ¶ 7. Plaintiff's PCS order included reimbursement for moving expenses. *Id.* However, Plaintiff received no payments due pursuant to his PCS order until on or around February 2014. *Id.* ¶ 18. Plaintiff's supervisor at the time was Mr. Carl Barrett. Barrett was Plaintiff's supervisor from October 2011 to January 2014. *Id.* ¶ 6. Plaintiff reported the delay in payment to Barrett repeatedly from March 31, 2011 to January 1, 2014, but the PCS had internal errors committed by Defendant's employees that required amendments to correct. *Id.* ¶¶ 11, 12. As a result of the delays, Plaintiff faced economic hardship from moving expenses. *Id.* ¶ 14. Plaintiff alleges this was just one way in which Defendant sought to create a hostile work environment and that Barrett encouraged the PCS payment delays in order to pressure Plaintiff into early retirement. *Id.* ¶¶ 13, 14. Plaintiff states that in 2011 senior officials at APG informed employers and managers, including Barrett, that a reduction in force would occur if enough older employees did not retire. *Id.* ¶ 9.

While under the supervision of Barrett, Plaintiff requested a desk audit (a request for position reclassification) because Plaintiff was performing above the requirements of his position without compensation. *Id.* ¶ 22. Barrett denied Plaintiff's desk audit, claiming that there was a hiring freeze. *Id.* ¶ 23. However, another employee under the age of 40 was promoted during that

2

time. *Id.* Plaintiff states that throughout Barrett's supervision, he subjected him to constant harassment about retirement. *Id.* ¶ 60.

Plaintiff alleges additional efforts to create a hostile work environment by his supervisor after Barrett, Ms. Evette Jones-Hatton. Jones-Hatton became Plaintiff's supervisor on or around February 2014. *Id.* ¶ 26. At a meeting with Plaintiff, Jones-Hatton asked him: "are you one of those individuals who refused to retire from Fort Monmouth." *Id.* ¶ 28. Plaintiff asserts that Jones-Hatton did not ask any other team members about retirement. *Id.* Plaintiff again requested a desk audit from Jones-Hatton, which was denied. *Id.* ¶ 34. Plaintiff repeatedly let Jones-Hatton know that he was seeking promotion to a GS-11 position, however Jones-Hatton failed to notify him when such a position became available, despite informing other team members. *Id.* ¶¶ 36–39. Further, when Plaintiff asked Jones-Hatton about the position, she misinformed him about the closing date for the position, citing a later date. *Id.* ¶¶ 40–42. Plaintiff alleges additional harassment while supervised by Jones-Hatton, including Plaintiff being excluded from team efforts, meetings, and chain of command for younger workers, Jones-Hatton showing favoritism to younger workers, Plaintiff being denied information necessary to perform his job, co-workers commenting that Plaintiff was slow in reference to his age, and Jones-Hatton and peers bullying Plaintiff on a daily basis about his job performance and age. *Id.* ¶¶ 43–45, 47, 55.

On June 22, 2016, Plaintiff emailed his concerns to the team, and, on June 28, 2016, Jones-Hatton held a team meeting to discuss the email. *Id.* ¶¶ 49, 50. Plaintiff asserts that Jones-Hatton reprimanded him at this meeting. *Id.* ¶ 51. Further, Plaintiff contends that Jones-Hatton did nothing when another team member, Ms. Tineka Charles, called Plaintiff a "jerk," stated that Plaintiff took all day to draft emails due to his age, and told Plaintiff that she laughed at him in meetings because

his input was "silly." *Id.* ¶¶ 53, 54. As with Barrett, Plaintiff states that that Jones-Hatton also subjected him to constant harassment about retirement. *Id.* ¶ 61.

Plaintiff met with an Army Equal Employment Opportunity ("EEO") Counselor on August 16, 2016 and filed a formal U.S. Equal Employment Opportunity Commission ("EEOC") complaint for age discrimination on September 26, 2016. *Id.* at 11, ¶ 71; ECF No. 1-1 at 1. Plaintiff's EEOC complaint specified age discrimination and cited five specific examples: the June 28, 2016 meeting; the promotion of a coworker to a GS-12 position; the misinformation about the GS-11 position closing date; the PCS payment delays; and errors in filling out Plaintiff's job series and duties by his branch chief. ECF No. 13-2 at 4–5.[2] Plaintiff's initial EEOC complaint was dismissed but then remanded on appeal to the EEOC Office of Federal Operations (EEOC-OFO). *Id.* at 11. Plaintiff's complaints for discrimination under Barrett were originally dismissed as untimely, but EEOC-OFO concluded that such incidents were timely as "part of the alleged pattern of harassment," because an event occurred within the 45-day period preceding Plaintiff's contact with the EEO Counselor on August 16, 2016. *Id.* at 16. The EEOC then accepted four of the above claims for investigation, excluding the job series and duties errors. *Id.* On January 5, 2021, the EEOC Administrative Judge granted Defendant's motion for summary judgment of the EEOC complaint, finding no discrimination and issued a Final Agency Action ("FAA"). ECF No. 1-1 at 2; ECF No. 13-1 at 4. Plaintiff timely filed his Complaint in this Court on April 5, 2021. *See* 29 C.F.R. § 1614.407 ("A complainant who has filed an individual complaint . . . is authorized under title VII, the ADEA, [and] the Rehabilitation Act . . . to file civil action in an appropriate United

---

[2] Due to conflicting page numbers on Defendant's Exhibit A, excerpts from the EEOC Investigative File (ECF No. 13-2), the Court will use the internal pagination assigned by the CM/ECF system.

4

State District Court . . . [w]ithin 90 days of receipt of the agency final action on an individual . . . complaint.").

## PROCEDURAL BACKGROUND

On April 5, 2021, Plaintiff filed suit in this Court, alleging that Defendant discriminated against him in employment and created a hostile work environment based on his age and disability. ECF No. 1.[3] Plaintiff also asserts that he experienced retaliation in violation of the Title VII after filing his EEOC complaint. *Id.* ¶ 20. On July 1, 2021, Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment. ECF No. 13. After the Court granted Plaintiff his Consent Motion for Extension of Time to Respond to Defendant's Motion, Plaintiff responded in opposition on August 5, 2021. ECF No. 16. Defendant then replied on August 19, 2021. ECF No. 17. Accordingly, this matter is now fully briefed, and the Court has reviewed Defendant's Motion as well as the responses thereto. For the following reasons Defendant's Motion is GRANTED in part and DENIED in part.

## DISCUSSION

### A. Standard of Review

#### 1. Motion to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] On April 5, 2021, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings pursuant to Standing Order 2019-07, and on June 10, 2021, all parties voluntarily consented in accordance with 28 U.S.C. § 636. ECF Nos. 2, 10.

5

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). "[A] plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citations omitted). When considering a motion to dismiss a court must accept as true all factual allegations in the complaint, but not legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 (citations omitted).

### 2. Motion for Summary Judgment

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment, but rather there must be a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of

the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). If, however, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)). Ordinarily, summary judgment is only appropriate after the parties have had adequate time for discovery; indeed, a court "must refuse summary judgment where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013) (alterations and citations omitted).

Defendant has styled its motion as a Motion to Dismiss or in the Alternative for Summary Judgment. ECF No. 13. A motion styled in this manner implicates the court's discretion under

Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436–37 (D.Md.2011), *aff'd* 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that if the Court considers matters outside the pleadings, the Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12. "A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Whitaker v. Md. Transit Admin.*, No. ELH-17-00584, 2018 WL 902169, at *7 (D.Md. Feb. 14, 2018) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.)). "In general, courts are guided by whether consideration of extraneous material is likely to facilitate the disposition of the action, and whether discovery prior to the utilization of the summary judgment procedure is necessary." *Id.* (citation omitted).

Under Rule 12(b)(6), a court may consider documents that are explicitly incorporated by reference or attached as exhibits to the complaint without converting the motion to one for summary judgment. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). *See State Farm Mutual Automobile Insurance Company v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536, 552 (D.Md. 2019). Moreover, where the plaintiff fails to incorporate pertinent documents as part of his complaint, a court "may consider a document submitted by the movant that was not attached to or expressly incorporated in the complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity" without converting the motion to one for summary judgment. *Goines*, 822 F.3d at 166.

Here, Plaintiff's Complaint refers significantly to his EEOC complaint in his Complaint and his attached exhibits. The Defendant provided excerpts from the undisputed EEOC

8

investigative file as an exhibit (ECF No. 13-2) to its motion. Since this file is integral to Plaintiff's Complaint and referenced in Plaintiff's responses, the Court may properly consider it and view this motion as a motion to dismiss, rather than a motion for summary judgment. *See Goines*, 822 F.3d at 166.

### B. Defendant's Motion

Defendant seeks dismissal of Plaintiff's Complaint. Plaintiff's Complaint alleges three causes of action: (1) age discrimination in violation of the ADEA; (2) disability discrimination in violation of the Rehabilitation Act; and (3) retaliation in violation of Title VII. ECF No. 1 ¶ 58–73. The ADEA requires: "All personnel actions affecting employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a. *See Babb v. Wilkie*, 140 S.Ct. 1168, 1172 (2020). The Rehabilitation Act prohibits discrimination based on disability, stating: "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of [his] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" in, at issue here, their federal employment. 29 U.S.C. § 794(a). And finally, Title VII provides that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Moreover, it makes it "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he has made a charge . . . in an investigation, proceeding, or hearing" by the EEOC. *Id.* § 2000e-3(a). *See Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Although neither the Supreme Court nor our court has squarely addressed whether 2000e-16(a) prohibits retaliation, reading these provisions together leaves us with little doubt that Congress incorporated the protections against retaliation afforded to private employees by 2000e-3(a)." (citations omitted)).

In its Motion, Defendant contends that Plaintiff has failed to state a claim under Fed.R.Civ.P. 12(b)(6). Specifically, Defendant asserts that Plaintiff failed to state a claim upon which relief can be granted because: (1) Plaintiff has not properly exhausted any of his claims besides age discrimination while supervised by Ms. Evette Jones-Hatton; and (2) Plaintiff has failed to allege sufficient facts to state a claim for hostile environment because of his age. ECF No. 13-1 at 2. The Court addresses each argument below.

1. Administrative Exhaustion

Defendant first asserts that Plaintiff's Complaint must be dismissed because he has failed to timely exhaust his administrative remedies for his Rehabilitation Act and Title VII retaliation claims, as well as for the alleged age discrimination through delays in his PCS payment. To allege violations of the ADEA, the Rehabilitation Act, and Title VII in federal court, Plaintiff must first exhaust his administrative remedies. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty., Texas v. Davis*, 139 S.Ct. 1843 (2019) ("Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the EEOC." (citing 42 U.S.C. § 2000e-5(f)(1) and 29 U.S.C. § 626(d))); *Stewart v. Iancu*, 912 F.3d 693, 698 (4th Cir. 2019) ("Rehabilitation Act claims must comply with the same administrative procedures that govern federal employee Title VII claims." (citations omitted)). The exhaustion requirement serves two purposes: first, it "protects administrative agency authority," and second, it "promotes efficiency." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citations omitted). Incidents alleged under a hostile work environment are treated as "one unlawful employment practice," therefore "the employer may be liable for all acts that are part of this single claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). "In order for

10

the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.*

"The Fourth Circuit has consistently opined that a plaintiff's claim exceeds the scope of the EEOC charge where the EEOC charge alleges one basis of discrimination and the litigant seeks to introduce another basis of discrimination." *Ebaugh v. Mayor & City Council of Baltimore*, No. CV ELH-20-663, 2021 WL 2580118, at *9 (D.Md. June 23, 2021) (citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005)). To determine the scope of the EEOC charge, the Court must look to Plaintiff's claims that were "stated in the initial charge, . . . reasonably related to the original complaint, and . . . developed by reasonable investigation of the original complaint." *Chacko.*, 429 F.3d at 506 (citations omitted). The inquiry is thus not limited to the box checked by the Plaintiff but to the full narrative complaint of discrimination. *See Ebaugh*, 2021 WL 2580118, at *8; *Loconte v. Montgomery Cty., Md.*, No. PWG-17-2052, 2018 WL 3642586, at *5–6 (D.Md. Aug. 1, 2018). The Court can hear claims not directly presented to the EEOC "so long as they are reasonably related to the plaintiff's EEOC charge and can be expected to follow from a reasonable administrative investigation." *Ebaugh*, 2021 WL 2580118, at *8 (citations omitted).

In *Ebaugh*, this Court granted in part a motion to dismiss with regard to the plaintiff's allegation of age discrimination under the ADEA because the plaintiff had failed to exhaust her administrative remedies. *Id.* at *9. Plaintiff complained of retaliation and disability discrimination to EEOC, but made no mention of age, and her claims before this court did not "flow" from her other Title VII claims. *Id.* Similarly, in *Bryant v. Bell Atlantic Maryland, Inc.*, the U.S. Court of Appeals for the Fourth Circuit explained that "[a]dministrative investigation of retaliation, and color and sex discrimination, however, could not reasonably be expected to occur" where the

11

plaintiff's sole charge in his EEOC complaint was race discrimination. 288 F.3d 124, 133 (4th Cir. 2002).

Here, Plaintiff contends that he has exhausted his administrative remedies for all claims because his claims are related to his original charge to the EEOC. ECF No. 16-1 at 19. The Court is not convinced. Plaintiff's EEOC Complaint alleges age discrimination, and his narrative details incidents in which he experienced "[p]ersistent and ongoing age discrimination." ECF No. 13-2 at 4. The claims accepted by the EEOC for investigation make no reference to disability discrimination or any alleged retaliation for speaking with an EEO counselor. It is thus clear on its face that Plaintiff did not allege any retaliation or disability discrimination in his EEOC Charge form. *See id.* Plaintiff's claims for disability discrimination and rehabilitation are thus similar to the circumstances in *Ebaugh* and *Bryant*: Plaintiff cannot allege a different source of discrimination in this Court because his claims do not flow from the EEOC investigated claims. *See Ebaugh*, 2021 WL 2580118, at *9; *Bryant*, 288 F.3d at 133.

Plaintiff is not necessarily barred from bringing an action for disability discrimination and retaliation solely because he only checked the "age" discrimination box in filing his charge. However, his claims are barred because he has failed to show the alleged disability discrimination and retaliation were reasonably related or expected to arise from his investigation, as they are nowhere in his charge. *See Chacko v. Patuxent Inst.*, 429 F.3d at 506. Plaintiff's EEOC complaint does not allege—even indirectly—that Defendant retaliated against him for engaging in a protected activity in violation of Title VII. Plaintiff's discussion of his impaired health in his EEOC interview was not related to allegations of disability discrimination or retaliation, but instead to the impacts of the alleged age discrimination, which is not in dispute. *See* ECF No. 16-1 at 19.

12

The Court, however, is not persuaded by Defendant's argument that Plaintiff's PCS claims were similarly not exhausted. Unlike his other claims, Plaintiff's PCS claims were identified in the narrative of his complaint, accepted by the EEOC for investigation, and investigated by the EEOC. ECF No. 13-2 at 11. Plaintiff alleges a hostile work environment claim, and while his claim alleges different supervisors, he alleges ongoing acts of age discrimination over the course of years from 2011 to 2016. The EEOC treated Plaintiff's allegations as a "persistent and ongoing pattern of harassment that encompasse[d] some matters which fell within the forty-five day period preceding his initial EEO Counselor contact." *Id.* at 15 (citations omitted). Therefore, his PCS delay allegations were part of a timely-filed continuing violation investigated by the EEOC.

I find that Plaintiff's claim of age discrimination related to the PCS delays was timely exhausted as part of Plaintiff's alleged hostile work environment claim. However, Plaintiff's claims for disability discrimination in violation of the Rehabilitation Act and retaliation in violation of Title VII fail because he did not exhaust his administrative remedies. Plaintiff did not allege such claims in, nor did such claims relate to, his EEOC complaint. As such, the Court will grant Defendant's motion in part with regard to Counts II and III for violations of the Rehabilitation Act and Title VII respectively.

2. <u>Hostile Work Environment Claim under the ADEA</u>

Defendant further argues that Plaintiff's remaining claim for age discrimination in violation of the ADEA should be dismissed because he failed to state a claim for hostile work environment based on his age. To assert a claim for hostile environment under the ADEA, Plaintiff needs to show: "(1) that [he] is at least 40 years old; (2) that [he] was harassed based on [his] age; (3) that the harassment had the effect of unreasonably interfering with [his] work, creating an environment that was both objectively and subjectively hostile or offensive; and (4) that [he] has some basis for

13

imputing liability to [his] employer." *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999) (citations omitted). "The ADEA does not expressly prohibit the creation of a hostile work environment," and this circuit has permitted such claims, relying in part on Title VII hostile work environment standards for ADEA claims. *Kearns v. Northrop Grumman Sys. Corp.*, No. CIV.A. ELH-11-1736, 2014 WL 2170781, at *16 (D.Md. May 23, 2014).

Because Plaintiff is over 40 (born 1952), *see* ECF No. 1 ¶ 1, and is alleging discrimination by his employer, at issue here are the second and third elements of the hostile environment framework. The second element requires that "but for his age, [Plaintiff] would not have been the victim of discrimination." *Kearns*, 2014 WL 2170781, at *17 (citations omitted) (explaining that, to survive a motion for summary judgment, Plaintiff had to show that the harassment did not stem from "personal animosity, workplace competition, or general boorishness, but rather from age-based animus"). "An employee is harassed 'based on' his age if, but for his age, he would not have been the victim of the discrimination." *Royster v. Gahler*, 154 F.Supp.3d 206, 236 (D.Md. 2015), *abrogated on other grounds by Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97 (4th Cir. 2019).

This Court in *Kearns* explained that two occasions in which the plaintiff's supervisor asked "innocuous questions" about a plaintiff's plans to retire "standing alone, cannot establish that the workplace was permeated with age-based animus," because employers have a legitimate interest in their employee's plans for the future. *Kearns*, 2014 WL 2170781, at *17. Further, plaintiff did not allege any age-based derogatory language or "uncouth comments." *Id.* Similarly, allegations of numerous derogatory comments, as well as being yelled at and physically threatened, were "wholly insufficient to state a claim for hostile work environment based on age" because no factual allegations related to the plaintiff's age. *Royster*, 154 F.Supp.3d at 236. The only age-based fact

14

alleged—that similarly situated employees not of the plaintiff's age did not have the same experiences—were insufficient to show that the plaintiff was harassed because of her age. *Id.*

To satisfy the third element, the alleged harassment "must be severe or pervasive enough to create a subjectively and objectively hostile or abusive work environment." *Wells v. Gates*, 336 F.App'x 378, 388 (4th Cir. 2009) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). This standard is not a "general civility code" meant to target "the ordinarily tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted). The Court should weigh a number of factors to determine whether action was objectively hostile, including: the frequency or severity of the conduct, physically threatening or humiliating conduct, conduct that is more than a "mere offensive utterance," and unreasonable interference with an employee's performance. *Harris*, 510 U.S. at 23. *See Wells*, 336 F.App'x at 388. Because this element includes both a subjective and objective standard, Plaintiff must show both that he "did perceive, and [that] a reasonable person would perceive, the environment to be abusive or hostile." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009) (citing *Harris*, 510 U.S. at 21–23). *See Kearns*, 2014 WL 2170781, at *16.

This Court recently explained that "the mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII," or by extension, the ADEA. *See Angelini v. Baltimore Police Dep't*, 464 F.Supp.3d 756, 790 (D.Md. 2020) (quoting *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (alterations omitted)). "A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

15

environment." *Boyer-Liberto*, 786 F.3d at 277 (alterations and citations omitted). An objectively hostile work environment does not exist when the Court is asked to solely "weigh[] the prudence of employment decisions made by employers charged with employment discrimination." *Wells*, 336 F.App'x at 388 (alterations and citations omitted).

This Court concludes that Plaintiff's Complaint has provided sufficient facts to allege a plausible claim for hostile work environment based on age under the ADEA. While this Court in *Kearns* explained that two innocuous questions about retirement were not enough to sustain the claim, Plaintiff here has plead greater facts to support his claim for age discrimination. Plaintiff states that he received "constant harassment about retirement" from his two supervisors over the course of five years and alleges that the three-year PCS payment delay was done to encourage his retirement. ECF No. 1 ¶¶ 14, 15, 20, 28, 60, 61. Plaintiff supports his belief that the PCS delay was due to his age by alleging that a similarly-situated younger employee was paid quickly. *Id.* ¶ 19. Further, Plaintiff has plead additional facts beyond harassment about retirement and PCS delay to indicate a broader scope of hostile environment based on his age, namely: "daily bullying from his manager and from peers" related to his age; repeated denials of desk audits despite another younger coworker receiving a promotion; differential treatment from younger coworkers by a supervisor, favoritism to younger coworkers in assignments and interactions; misinformation about an open position; comments by coworkers about his age and slowness; and the June 28, 2016 meeting in which Plaintiff was reprimanded, called a jerk, and told he was laughed at and took all day to write emails. *Id.* ¶¶ 47, 23, 34, 33, 44, 38–42 45, 53. Plaintiff's factual allegations thus show that he has provided more than the bare assertions of asking about retirement or differential treatment to younger employees in *Kearns* and *Royster*. Therefore, the Court finds that Plaintiff

has pled sufficient facts to satisfy the second element, that but for his age, Plaintiff would not have experienced the discrimination.

Turning then to the third element, the Court will accept as true at this stage that Plaintiff's work environment was subjectively hostile or offensive, considering especially the onset of his diabetes which he attributes to the hostile environment. The closer question then is whether the alleged facts support that the environment was objectively hostile or offensive. Given the decisions in *Angelini* and *Wells*, allegations that a coworker once called him a "jerk" or "slow" and that he did not receive promotions alone would likely be insufficient to allege an objectively hostile or offensive work environment. However, the factors in *Wells* and *Harris* provide guidance. First, Plaintiff alleges frequent conduct, citing "constant harassment" spanning years, and ongoing incidents through those years. Second, Plaintiff alleged conduct that was humiliating in nature. He described being mocked as slow by his coworkers; received daily bullying from his coworkers; and called a jerk, slow, and silly by at least one coworker in a team meeting, without intervention from his supervisor. ECF No. 1 ¶¶ 45, 47, 53. These allegations also support the third factor that Plaintiff experienced more than a mere offensive utterance. And finally, Plaintiff alleges significant interference with his performance, including being excluded from team efforts and meetings, denied promotions and information necessary to do his job, disregarded from the chain of command, and misinformed about opportunities for advancement. *Id.* ¶¶ 22–23, 34, 38-45. While the severity of such conduct is not clear on the facts, Plaintiff does allege he had significant health and financial impacts of the hostile work environment. *Id.* ¶¶ 14, 46. And further still, Plaintiff is not required to prove elements at this stage. *See Walters*, 684 F.3d at 439.

Defendant argues that Plaintiff's allegations "fall woefully short of the type of conduct that supports a plausible claim for a hostile work environment," citing cases. ECF No. 17 at 6–7; ECF

No. 13-1 at 20–21. However, the Court disagrees. The Fourth Circuit in *Perkins v. Int'l Paper Co.* did uphold a grant of summary judgment, a notably different stage of the litigation, because the plaintiff failed to describe conduct that was "frequent, physically threatening[,] or humiliating." 936 F.3d 196, 209 (4th Cir. 2019). However, unlike the cases cited by Defendant, Plaintiff has alleged a hostile environment that spanned years and included allegations of humiliating name calling, criticism in front of team members, and harmful personnel decisions. While each of those factors alone may not be enough to sustain a claim for hostile work environment, Plaintiff has alleged all of them in an ongoing pattern. Accepting as true all factual allegations in the Complaint, the Court finds that Plaintiff has plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). At this stage Plaintiff is not required to prove the elements of his claim, but rather just demonstrate that his claim is plausible. *Walters*, 684 F.3d at 439. As such, the Court will deny Defendant's motion in part with regard to Count I.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that Plaintiff has pled sufficient facts to state a claim to allege a hostile work environment in violation of the ADEA. However, Plaintiff has failed to state a claim for violation of the Rehabilitation Act and Title VII, because he failed to exhaust his administrative remedies. Therefore, Defendant's Motion (ECF No. 13) is GRANTED in part with regard to Counts II and III and DENIED in part with regard to Count I. A separate order will follow.

Date: 21 September 2021

A. David Copperthite
United States Magistrate Judge